The People of the State of New York ex rel. The New York Real Estate Association, Appellant, *v.* Edward P. Barker and Others, Commissioners of Taxes and Assessments of the City and County of New York, Respondents.

*Taxation — assessment of a corporation owning buildings on leased land — what deductions are proper.*

In proceedings to review an assessment, for the purposes of taxation, against the capital and surplus of a domestic corporation, it appeared that the commissioners of taxes accepted the return of the corporation showing just how its capital and surplus were made up; and because it thereby appeared that the capital was unimpaired, they caused a valuation to be made of certain build-

326 PEOPLE ex rel. N. Y. REAL EST. ASSN. *v.* BARKER.

First Department, May Term, 1898. [Vol. 29.

ings belonging to it which had been placed upon leased grounds, and upon the theory that the corporation was not entitled to credit for the value of the lands upon which the buildings were situated, they deducted simply the value of the buildings and the ten per cent exemption provided for by statute. It was conceded that the corporation had no property but real estate, of some of which it held the fee, and in some, on which the buildings in question stood, a leasehold interest — the corporation having, under its covenant in the lease, agreed to pay the taxes on the property.

*Held,* that the commissioners, after accepting the statement of the corporation as to the amount of its gross assets and as to what constituted the same, were not in a position to insist that the corporation owned only the buildings and not the land, and that, consequently, only the value of the buildings could be deducted, and at the same time hold that the corporation owned both the land and the buildings for the purposes of assessment, it being evident that such a scheme would result in a double taxation of the land.

Appeal by the relator, The New York Real Estate Association, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 16th day of April, 1897, dismissing a writ of certiorari issued to review the assessment against the capital and surplus of the relator, a domestic corporation, for the purposes of taxation, for the year 1896, and also from a judgment entered in said clerk's office on the 16th day of April, 1897, upon said order.

After the assessment for the year 1896 and the value of the real estate and personal property owned by the relator were entered in the books for that year, and during the time permitted by law, the relator protested that it had no capital stock or surplus and no personal property subject to taxation, for the reason that all its property was invested in real estate situated in the county of New York; that the actual value of the capital stock over and above the amount thereof invested in such real estate was nothing, and that the capital stock and surplus, by reason of such investment, was exempt from taxation as capital stock and surplus, and was and is taxed as real estate; that in making such assessment the commissioners had believed and assumed to be true the statement of the relator that the capital stock and surplus had no value except that of the said real estate; that although the assessed value of the same, together with ten per cent exemption of surplus, largely exceeded the total gross assets, and was so accepted by the commissioners, yet they assessed the actual value of the capital stock and surplus at the sum

PEOPLE ex rel. N. Y. REAL EST. ASSN. *v.* BARKER. 327

App. Div.]          First Department, May Term, 1898.

of $794,963; that it was required to render a statement for the purpose of assessment on the 2d Monday of January, 1889, and therein, in answer to specific questions, stated that its total assets were $1,269,962.65; that its capital stock actually paid in and secured to be paid in was $1,000,000; that the amount of surplus earnings was $269,962.66;. that its rate of dividend for last year, or last annual dividend, was eight per cent; that its indebtedness in detail was as follows : Due and held for dividends, $16,686.69 ; that the assessed value of real estate owned by it was $1,250,000; that the entire capital and surplus was invested in real estate and buildings owned by the association and built by it upon property leased by it from the Society of the New York Hospital, which property is situated in the fifth ward of the city of New York, ward numbers 815½, 815 A, B, E, D, G, H, 830 Y and 815, 1174 and 1388; that the assessed value of said real estate is $1,250,000.

The commissioners in their return admit the receipt of the application for cancellation of the assessment and of the statement showing the condition of the relator, and state : " Among other facts which the relator furnished us as facts which relieved it from liability to assessment upon its capital and surplus, it stated its debts at $35,666 ; gave the assessed value of what it claimed to be its real estate at $1,250,000, and asserted that its entire capital stock was issued and paid for such real estate ; " that it appeared, however, that the ground upon which the buildings erected by the relator stood was not owned by the relator, but was occupied' by it under leases ; that having examined the leases, the commissioners ascertained that they contained a clause in and by which the relator covenanted to pay all taxes and assessments. that might be assessed against the property leased; that they caused a valuation to be placed upon the land, as distinct from the buildings on the leased premises, and on the buildings as distinct from the lands, and determined from the evidence submitted that the aggregate value of the lots was $889,000, and the aggregate value of the buildings $375,000. " We determined, therefore, that we would accept as true the relator's statement that its total gross assets amounted to $1,269,963, and the exhibition made to us as to what constituted the said total gross assets from which we ascertained the capital stock paid in or secured to be paid in to be as hereinbefore stated,

328 PEOPLE ex rel. N. Y. REAL EST. ASSN. v. BARKER.

First Department, May Term, 1898. [Vol. 29.

$1,000,000, and that the relator had added to its capital a surplus capital in excess of both its capital and debts of $269,962, and had declared its last annual dividend at the rate of eight per cent. As these facts were established by the proof offered by the relator, we determined that its capital was unimpaired, and that having a right to find, as we did find, the capital was impaired, we were entirely justified in refusing to deduct the debts and in assuming that they were offset by assets above the capital which otherwise would have been liable to taxation. We, therefore, from the capital and surplus of the relator deducted ten per cent of the capital, and what we determined upon the only proof before us was the actual value of the buildings standing on said leased lots, the only real estate owned by the relator; and having made these deductions we determined that the relator was assessable upon the balance as representing its capital and surplus liable to taxation, amounting to the sum of $794,963, and accordingly we fixed the assessment against the capital and surplus of the relator at that figure."

*Wheeler H. Peckham*, for the appellant.

*James M. Ward*, for the respondents.

O'Brien, J.:

There is no dispute about the facts, from which it is clearly made to appear that, exclusive of two pieces of property which the relator owns in fee, amounting to $111,237.43, its capital and surplus consisted entirely of the buildings which had been placed upon leased ground and the leasehold interest therein. There is no suggestion in the record that, outside of a small cash balance, which for the purposes of this discussion need not be considered, the relator had any personal property. Instead of taxing the cost, which was the method pursued by the relator in accounting for the amount of its capital and surplus, the commissioners took, as they had the right to do, the actual value of the buildings and of such leasehold interests. If the relator had adopted the latter method and reached the same result as to figures, then, necessarily, the statement would show an impairment of capital to the extent of the difference between the amount invested in the buildings, or their cost, and the actual value of the same in 1896. In determining the amount which should be

PEOPLE ex rel. N. Y. REAL EST. ASSN. *v.* BARKER. 329

App. Div.]      First Department, May Term, 1898.

deducted in the nature of real estate assessed the commissioners correctly included the buildings as real estate. The commissioners accepted the relator's return, showing just how its capital and surplus were made up ; and because it thereby appeared, according to their statement, that the capital was unimpaired, they caused a valuation to be made of the buildings ; and, upon the theory that the relator was not entitled to credit for the value of the land upon which the buildings were situated, they deducted simply the value of the buildings and the ten per cent exemption provided by the statute (§ 3, chap. 456, Laws of 1857), and concluded that the amount thus arrived at was the assessable value which they had a right to place upon the relator's capital and surplus.

This statement of itself shows that the amount of the assessment is erroneous. In accepting the relator's statement that its capital was unimpaired and that it had a surplus, they should also have taken the further statement — because it is not disputed and there is no question raised about it — that such capital and surplus consisted of the real estate and buildings. In other words, although it appeared that the capital and surplus were invested in real estate to the full extent, as claimed by the relator, and that by reason of such investment the capital was unimpaired, yet, the commissioners, accepting one part of the statement in reference to the non-impairment, refused to accept the other showing that such non-impairment was due to the fact that there had been an investment of the whole amount of capital and surplus in real estate and buildings. The effect of reducing the value of the property in which the capital and surplus were invested was necessarily a reduction in value of the relator's capital and surplus. The commissioners agree that the relator has no property but real estate, some of it in fee, some of it leasehold. After accepting the relator's statement of the amount of its gross assets and as to what constituted the same, it is difficult to understand how, when called upon to deduct the assessed value of the real estate, they can insist that the relator owned only the buildings and not the land, and that, consequently, only the value of the buildings can be deducted, and at the same time hold that the relator owned both the land and the buildings for the purposes of assessment. It is too plain for discussion that if the assessed value of the

real estate cannot be deducted from the relator's property liable to taxation, the property cannot be included as liable to assessment. If it is placed on one side of the account as actual value it must go in on the other as assessed value. In other words, the commissioners having found that the relator had no other property going to make up its capital and surplus than what was invested in the land and buildings, they could not place upon it for the purposes of taxation a larger figure than they were prepared to allow when they were required to deduct the value of the real estate for the purpose of seeing what portion of the capital and surplus was liable to taxation. Such a scheme would necessarily result in double taxation. The property has been taxed as real estate, and as it is the same property in which all the capital and surplus of the relator is invested, unless its value is deducted from the amount of such capital and surplus it will be twice taxed; so that the relator, having under its covenant in the lease agreed to pay the taxes, would be again obliged to pay the same tax, not as upon real estate, but as an assessment upon its capital and surplus.

We think that the writ should have been sustained; and inasmuch as the relator has paid, under an assessment against its capital, the tax over again which it was also bound to pay as a tax upon the land, pursuant to the covenant in its lease, the final order should be reversed and an order made canceling that assessment and directing repayment to the relator of the amount of the tax and interest, with fifty dollars costs below and the costs and disbursements of this appeal.

VAN BRUNT, P. J., PATTERSON, INGRAHAM and MCLAUGHLIN, JJ., concurred.

Order reversed and order directed to be entered canceling assessment and directing repayment to relator of the amount of the tax and interest, with fifty dollars costs below and costs and disbursements of appeal.