(110 App. Div. 194.)

PEOPLE ex rel. MERCHANTS' REAL ESTATE CO. v. WELLS et al., Tax Com'rs.

(Supreme Court, Appellate Division, First Department. December 30, 1905.)

TAXATION—ASSESSMENT—CAPITAL OF CORPORATION—REAL ESTATE—VALUATION.

Under the statute requiring real estate to be assessed at its full value when taxed as such, and the further statute requiring real estate to be appraised at its full value, when it is considered as part of the capital and surplus of a corporation for the purpose of taxing such capital and surplus, the commissioners of taxes and assessments cannot fix one value on a piece of real estate when assessing it for taxation as such, and then fix a different value upon the same piece of real estate when appraising it as a part of the capital and surplus of a corporation, in order to determine the taxable value of such capital and surplus.

[Ed. Note.—For cases in point, see vol. 45, Cent. Dig. Taxation, § 632.]

Laughlin and Houghton, JJ., dissenting.

Appeal from Special Term, New York County.

Application by the people, on the relation of the Merchants' Real Estate Company, for a writ of certiorari to review an assessment on relator's capital stock, made by James L. Wells and others, as commissioners of taxes and assessments of the city of New York. From an order dismissing the writ, relator appeals. Reversed.

Argued before O'BRIEN, P. J., and McLAUGHLIN, INGRAHAM, LAUGHLIN, and HOUGHTON, JJ.

Henry W. Hayden, for appellant.
E. Crosby Kindleberger, for respondents.

O'BRIEN, P. J. It appears beyond dispute that, outside of the small amount of money in the bank, which was offset by an indebtedness, the entire capital and surplus of the relator consisted of real estate, and that for the purpose of reaching the sum at which the relator was taxed upon its capital and surplus this real estate was placed at a greater value than it was assessed for the purpose of taxation as real estate. The question presented, therefore, is whether the same real estate can be fixed at a greater value, depending upon

whether the inquiry by the commissioners is to ascertain the amount for which the relator is liable upon its capital stock and surplus, than it was assessed at for the purpose of taxation as real estate.

It may be conceded that there is a difference, but the statute expressly provides that in fixing the value of real estate for the purpose of taxation as real estate, the commissioners shall assess it at its full value, and this is the value at which the statute provides it must be fixed when it is considered as part of the capital and surplus of a corporation. To hold that the commissioners, in disregard of their statutory duty, can fix a different value upon the same property for different purposes, is introducing an element of uncertainty and inconsistency upon a subject that is sufficiently intricate and perplexing, and which, as shown in People ex rel. N. Y. Real Estate Ass'n v. Barker, 29 App. Div. 329, 51 N. Y. Supp. 567, if allowed, might, as in that case, result in double taxation.

The order should be reversed, with costs, and the writ sustained.

McLAUGHLIN, J., concurs.

INGRAHAM, J. I think this order should be reversed upon the facts, as the clear preponderance of evidence is that the deputy commissioner of taxes swore to the truth when he stated that he had assessed this property at its fair valuation.

LAUGHLIN, J. The commissioners of taxes and assessments for the year 1903 in the first instance determined the valuation of the capital stock and surplus profits of the relator liable to taxation to be $100,000. The relator duly applied for a revision of this assessment, and its application therefor was accompanied by a statement of its assets and liabilities, and was later supplemented by another, copies of which are annexed to the return. The commissioners subsequently revised and reduced the assessment to $20,590. The value of the capital stock is not stated in the petition or in the writ; nor do they disclose the basis upon which a revision of the assessment was sought before the board or is claimed here. The writ itself, however, recites that the relator's contention is that its property consists of real estate; that its only personal property was a balance of $2,388.30 on deposit in a bank, consisting of rentals from the real estate; and that it owed $6,800. The return was made by the successors in office of the commissioners who levied the assessment. Only one of the five members composing the board when the assessment was levied continued in office until the return was made. The return showed that the deputy tax commissioner whose duty it was to personally examine the premises and buildings and assess the same in the first instance fixed the assessed valuation at $100,000, at which sum it was entered in the "annual record of assessed valuation of real and personal estate of corporations."

During the revision period the relator, according to the return, claiming to be aggrieved by the assessment, made a formal application for a correction thereof, and transmitted therewith a verified statement of its assets and liabilities. The statements filed in support of the application, taken together, showed that the corporation was

organized in the year 1886 for the purpose of purchasing from the surviving partners and the heirs and devisees of deceased members of the co-partnership firm of J. C. Howe & Co. premises Nos. 57, 59, 61, and 63 Worth street, in the city of New York, and using the payment therefor the entire capital stock, of the par value of $400,000, distributed proportionately according to the respective interests of the owners; that the premises were conveyed to the corporation, and the capital stock was issued in payment therefor, pursuant to said plan, and that the company still held and owned the same; that the real estate, as matter of bookkeeping and in order to make the books balance, is carried on its books as an asset worth $400,000, but that this was not intended as the "actual value" of the property; that on the second Monday of January, 1903, the date on which the taxable status of its property became fixed, it had no other property, excepting $2,388.30 cash in bank accumulated from rent received from said premises; that it owed $5,000 for money borrowed, besides bills, aggregating $1,800, incurred as running expenses for the preceding month; that the assessed valuation of the real estate is $375,000. The blank provided by the commissioners of taxes and assessments, upon which the statement was made, required to be stated the "rate of dividend for last year, or last annual dividend," and this was stated to be 5 per cent. The blank also expressly provided that, if the stock was worth less than par, the actual value and the facts justifying it should be stated. The statement was made for the company by the treasurer, and the only attempt at compliance with this requirement was the insertion therein of the following:

"There have been no sales of the stock in recent years, and I am unable to state its value."

The return shows that the commissioners of taxes and assessments examined into these statements, and reduced the assessed valuation to $20,590. The return also shows, on information and belief derived from official records and date, that the commissioners of taxes and assessments valued the real estate at $400,000, and added to this the bank account of $2,388.30, and then deducted the debts $6,800, leaving a balance of $395,588 as the value of the assets, which is the value of the capital stock, and from this they deducted the assessed value of the real estate $375,000, leaving a surplus value of the capital stock not taxed of $20,588, and that thereupon they fixed the taxable value of the capital stock at $20,590. It is probable that this is the theory on which the assessed valuation was determined.

The principal point made by the learned counsel for the appellant is that this was double taxation, owing to the fact that, in determining the value of the capital stock for the purpose of assessing it, the real estate of the corporation was figured in as an asset on a valuation $25,000 higher than the valuation placed upon it by the same officials and at the same time for the purpose of taxation as real estate. Manifestly this would not be double taxation. There would apparently be an inconsistency, and it is evident that one or the other valuation of the real estate must have been erroneous. In the one case the direct inquiry was the actual value of the real estate for the purpose of assessing it as such; while in the other the value of the real estate was only invoked incidentally, as one of the assets of the corporation, in deter-

mining the amount for which a personal property assessment should be made against the corporation, by imposing the same upon its capital stock as prescribed by the statute. The rule of valuation of real and personal property for the purpose of taxation is the same. It would seem that the same assessing officers would realize that if the real estate, as an asset of the corporation giving value to its capital stock, was worth $400,000, they had undervalued it for the purpose of taxation as real estate. It does not follow, however, that the inconsistency is unexplainable, and that the real estate was overruled as an asset in determining the personal property assessment. It was for many years common knowledge that in no county of the state was real estate assessed at its actual value as required by the statute. A percentage of the actual value, differing somewhat at times throughout the state, was adopted. The assessing officers in each county were supposed to have been actuated by fear that, if they followed the statutory rule of full value, their constituents, owing to the adoption of a lower valuation elsewhere, would be obliged to pay a greater proportion of the state taxes than taxpayers in other counties. The state board of equalization repeatedly attempted to correct this departure from the statutory standard and the abuses incident thereto, and doubtless succeeded in a large measure. Since the direct taxes for state purpose, owing to other methods of taxation, have become quite small, the question as to whether real estate is assessed at a higher valuation in one county than in another does not appear to have been so conspicuously agitated as formerly. But whether or not the assessing officers deliberately assessed the real estate at only 93¾ per cent. of its actual value, which would account for the apparent inconsistency, is not material to the present inquiry, which is: Did they assess the capital stock at more than its actual value? Nor is it important to ascertain whether the Legislature in framing the statute, prescribing the method of taxing the capital stock of a corporation, had in mind that the real estate might not be assessed at its actual value. The language employed clearly shows a legislative intent to tax corporations on the full value of their property and under the rule prescribed by the statute this is accomplished, regardless of whether the assessed valuation of real estate is more or less than it should be. People ex rel. E. G. L. Co. v. Barker et al., 144 N. Y. 94, 39 N. E. 13; People ex rel. Clearing House v. Barker, 31 App. Div. 315, 53 N. Y. Supp. 1111; affirmed 158 N. Y. 709, 53 N. E. 1130, affirmed 179 U. S. 279, 21 Sup. Ct. 121, 45 L. Ed. 190. Whatever may be the assessed valuation of the real estate, it is deemed that the property of the corporation will be to that extent reached for assessment through that channel, and therefore that valuation is deducted from what is found to be the actual value of the capital stock which represents the surplus of assets over liabilities other than for capital stock. It is therefore manifest that the true issue in such cases must be whether there has been an overvaluation of the capital stock of the corporation; for no remedy is prescribed by statute in case of unequal valuation of personal property for the purpose of taxation. Greater New York Charter, Laws 1901, p. 386, c. 466, § 906.

The proceeding was not instituted on the theory that the tax was

void because the relator's property has been assessed at its full value, while other property on the same roll has been assessed uniformly at 90 per cent. of its actual value, and for that reason the questions as to whether such inequality has been satisfactorily shown, or would render the tax void, or relief could be afforded on a certiorari, are not presented. As has been observed, the assessed value of the real estate is evidence of the value of that asset of the corporation; but it is not conclusive evidence thereof. The decision of the questions, under the enlarged statutory remedy by certiorari, it to be determined, not by the evidence before the assessors, but by a review of the evidence adduced before the court to sustain the writ. The relator showed the facts alleged, and also that the premises formed a plot 100 feet square, consisting of four 25-foot lots with a building on each; that these buildings are each 5 stories in height and old-fashioned, having been erected in 1863 and 1864; that two of the buildings were leased as stores and two as lofts; that the total rentals in 1903 were $33,000 or $33,500; that dividends of 7½ per cent. in 1886, 9 per cent. in 1889, 6 per cent. in 1893, and during the last four years 5 per cent., were paid from the rentals. A real estate expert called by the relator testified that in his opinion the land was worth $283,250, and the buildings $66,500—not over 25 per cent. of their cost—making a total of $350,000. The relator also called the deputy tax commissioner, who listed the property in the first instance, and he gave in detail the method pursued in arriving at the assessed valuation of the real estate, and in so doing stated that he reached the determination that the fair market value of the premises was $417,000, but that then he adopted the valuation of $375,000 upon the theory that that is what, in his opinion, it would sell for at a forced sale on the Real Estate Exchange without many buyers present, and subsequently he admitted that after arriving at the actual market value he took off 10 per cent. "to equalize," and did likewise with "every piece of property in the vicinity or neighborhood." The relator admitted that it carried insurance on the buildings, but did not show the amount. In behalf of the commissioners another real estate expert was called, and he testified that, in his opinion, the market value of the premises was $401,196, and that it could be readily sold for $400,000.

The foregoing is the only material evidence introduced on the hearing. I am of opinion that it sustains the assessment. Notwithstanding the affidavit of the deputy commissioner, annexed to the rolls, that he had followed the statutory rule of valuation in fixing the taxable value of the real estate, I think it clearly appears from his admissions, adduced by the relators and from the other evidence, that he did not. Therefore the assessed valuation of the real estate presents no embarrassment in determining the value of the capital stock. I am of opinion that the relator has failed to show overvaluation of the capital stock.

It follows, therefore, that the order should be affirmed, with $50 costs and disbursements.

HOUGHTON, J., concurs.