FIRST TRUST COMPANY OF LINCOLN, APPELLEE, V. LAN-
CASTER COUNTY, APPELLANT.

FILED MAY 17, 1913. No. 17,795.

Taxation: ASSESSMENT: MORTGAGES. The act of 1911 (Laws 1911, ch.
105) Comp. St. 1911, ch. 77, art. I, provided that mortgages of
real estate in this state should be considered as an interest in the
land for purposes of taxation, and should be assessed to the mort-
gagee, unless the mortgagor agreed in the mortgage to pay the
taxes thereon. Under section 56 of the revenue act, such mort-
gages should be deducted from the value of the capital stock of
banks ar¹ trust companies, and the remainder assessed as capital
stock. Su..h mortgages are assessed separately from the capital
stock of the company whether the tax is paid by the mortgagor or
by the mortgagee.

APPEAL from the district court for Lancaster county:
ALBERT J. CORNISH, JUDGE. *Affirmed.*

*Grant G. Martin, Attorney General, George W. Ayres,
Frank E. Edgerton, J. B. Strode* and *G. E. Hager,* for ap-
pellant.

*Lincoln Frost* and *Walter L. Pope, contra.*

SEDGWICK, J.

The First Trust Company of Lincoln demanded that
the amount and value of the real estate mortgages which
it held should be deducted from the gross value of its
capital stock for purposes of taxation. The assessor re-
fused, and the county board also refused to make the de-
duction. Upon appeal to the district court for Lancaster
county, the action of the county board was reversed, and
it was ordered that the petition of the company be granted.
From this judgment of the district court the county has
appealed.

The petition alleges the value of the capital stock of the
company, and the amount and value of the real estate
mortgages owned and held by the company, and alleges
that the mortgages provided that the mortgagor shall pay

the taxes thereon, and that the taxes were paid by the mortgagors. Section 56, art. I, ch. 77, Comp. St. 1911, provides: "Whenever any such bank, association or company shall have acquired real estate or other tangible property which is assessed separately, the assessed value of such real estate or tangible property shall be deducted from the valuation of the capital stock of such association or company." The act of the legislature of 1911 (Laws 1911, ch. 105), entitled "An act to provide for the taxation of mortgages of real property and to prevent double taxation on incumbered property in the state," provides: "A mortgage on real estate in this state is hereby declared to be an interest in real estate for the purposes of assessment and taxation. The amount and value of any mortgage upon real estate in this state shall be assessed and taxed to the mortgagee or his assigns, and the taxes levied thereon shall be a lien on the mortgage interest; and the excess in value of the real estate above the mortgage or mortgages thereon shall be assessed and taxed to the mortgagor or owner of the premises and be a lien on the owner's interest. * * * And provided, further, that when it is provided and agreed in any mortgage, that the mortgagor shall and will pay the tax levied upon the mortgage, or the debt secured thereby, that such assessor or county clerk shall not enter said mortgage for separate assessment and taxation, but both interests shall be assessed and taxed to the mortgagor or owner of the property mortgaged." Comp. St. 1911, ch. 77, art. I, secs. 112b, 112c.

The first argument of the appellant seems to be that the mortgages are not "assessed separately," within the meaning of section 56, because, since the mortgagors agreed to pay the taxes on the mortgages, they are required by the statute to be assessed with the land. But this of course is not the meaning of the statute. The capital stock is supposed to represent all of the property of the company and the full value thereof. If the company has acquired any property that is assessed separately and independ-

ently of the capital stock, it would be twice assessed if the full value of the capital stock is also assessed. Therefore property that has been assessed separately from the capital stock of the company is deducted from the value of the capital stock, and the remainder only is assessed as capital stock.

If the mortgagor does not agree to pay the taxes upon the mortgage, the tax must be assessed against the mortgagee. The statute expressly makes the mortgage an interest in the real estate for taxation purposes; but, if it were not, it is plainly included in the words, "any other tangible property," so that, if the mortgagee was liable for the taxes upon the mortgage, there could of course be no doubt that such mortgages, being assessed to the mortgagee, and assessed separately from the capital stock, should be deducted from the value of the capital stock in determining the value of the stock for taxation. Does the fact that the mortgagor has agreed to pay the tax on the mortgage interest require a different construction of the statute? The statute regards the mortgage as an interest in the land. The value of the mortgage and the value of the equity of redemption together are the value of the land. When the rate of interest upon a loan is being agreed upon, the man who loans the money inquires who will pay the taxes. Both the lender and the borrower will have the matter of taxes on the loan in mind while negotiating as to the rate of interest. The inducement to loan money is the net income therefrom. If taxes upon the mortgage and other expenses are 1 per cent., both the lender and borrower would, of course, consider it fair that the rate of interest should be 1 per cent. less if the borrower pays taxes and expenses than if the lender pays them. The mortgage being regarded as a part of the land, if full value of the land is assessed to the borrower, and the value of the mortgage is assessed to the lender, and the rate of interest is agreed upon on that basis, the borrower pays taxes upon both, which is double taxation. These mortgages which the company has acquired have

been assessed, and have been assessed separately from the capital stock of the company, and their assessed value should be deducted from the valuation of the capital stock in determining the value of the stock for taxation purposes.

The judgment of the district court is therefore right, and is

AFFIRMED.

BARNES, ROSE and FAWCETT, JJ., concur.

REESE, C. J., LETTON and HAMER, JJ., not sitting.

The following opinion on motion for rehearing was filed June 26, 1913. *Rehearing denied:*

1. **Taxation:** ASSESSMENT: CAPITAL STOCK OF BANKS. The law requires the assessor to "determine and settle" the *true value* of the capital stock of "every bank or banking association, loan and trust, or investment company." For that purpose he must require and examine a complete statement of the proper officer, under oath, showing the number of shares of the capital stock and the value of such shares. He must also examine the last report made to the authorities by such institution pursuant to law. And if he has reason to believe that these statements and reports fail in any respect to show the actual value of the assets, he must examine "the officers of such bank, association or company, under oath, in determining and fixing the *true* value of such stock." If the stock has a "market value" he must *consider* that, and must also *consider* "the surplus and undivided profits." He must *consider* these things, but is not concluded by them. He must find the true value of all assets for himself.

2. ———: ———: ———. All property and assets and everything of value is included in this *true value* of the stock, and if any of that property has been assessed separately from the capital stock, it must not be again assessed, but must be deducted and the remainder assessed as capital stock.

SEDGWICK, J.

Upon the motion for hearing, another argument was had and the case was again thoroughly and ably presented.

The principal point argued by defendant is that upon the construction of the statute by our former opinion the plaintiff company will escape taxation. The following is

quoted in the brief from *State v. Karr*, 64 Neb. 514: "The legislature may direct the manner of ascertaining the value of property and franchises; but it cannot prescribe rules that prevent the assessment of the property and franchises of corporations on an equality with property in general in proportion to value." The brief then states this illustration: "Take the case of a bank having say a capital stock of $50,000. It receives deposits to the amount of $50,000 or more. Fifty thousand of its deposits are loaned upon real estate security. In each instance the mortgagor agrees to pay the tax upon the land. The $50,-000 of the capital stock of the bank, and in addition thereto its deposits in excess of the $50,000 loaned by it on real estate, it loans out upon chattel or personal security. When it comes to the taxation of the value of its capital stock, if the opinion of this court heretofore rendered in this case is to be followed, it pays no taxes whatever upon same, owing to the fact that the $50,000 loaned by it upon real estate mortgages, upon which it pays no taxes, same being paid under agreement by the various mortgagors, is deducted from the value of its capital stock, which leaves nothing for taxation." If an individual loans $50,000 under the conditions named, he pays no taxes thereon, therefore to hold that a bank should would violate the rule of equality provided by the constitution. If the bank loans the remaining $50,000 on chattel mortgages, such securities are a part of its assets and enter into the value of its capital stock, and are so taxed. Thus no part of the $100,000 of the bank escapes taxation. The statute seems to avoid double taxation on real estate values, but no plan has been devised to avoid double taxation when money is loaned upon chattels. When the bank loans its $50,000 upon chattel securities, it pays taxes on those securities, and the borrower pays taxes upon the chattel property mortgaged and also upon the money borrowed, or such property as he may exchange that money for.

Section 56 of the revenue law is plain and unequivocal.

The proper officers "shall, on the first day of April of each year, make out a statement under oath, showing the number of shares comprising the actual capital stock * * * and the value of said shares on the first day of April. * * * The assessor shall determine and settle the true value of each share of stock after an examination of such statement, and in case of a national bank in (an) examination of the last report called for by the comptroller of the currency; if a state bank, the last report called by the state banking board; and if the county assessor deem it necessary, an examination of the officers of such bank, association or company, under oath, in determining and fixing the true value of such stock, and shall take into consideration the market value of such stock, if any, and the surplus and undivided profits." Comp. St. 1911., ch. 77, art. I, sec. 56. If a bank has any tangible property that is assessed as such and without reference to its capital stock, and the whole value of the capital stock is also assessed, there is double taxation, because this statute requires the assessor to find the true value of the capital stock, and he cannot do that without taking into account everything of value which the bank has. When he has done that, the law does not allow him to assess the full value of the capital stock, because some of the property which goes to make up that value has already been "separately assessed." He is required to assess all of the value of the capital stock that has not been already "separately assessed." It is a mistake to suppose that this does or can result in allowing some property to escape taxation. A little careful study will show that this does not so result. Assessors cannot by violating this law more accurately ascertain the true value of the property of a bank for taxation purposes. It is more likely that a failure on the part of some assessors to understand and obey the law has enabled banks to escape taxation in many cases. The law gives assessors ample means to enable them to do their duty. If they fail to avail themselves of these means, it is the fault of

the assessors or of their advisors, and not the fault of the law. The assessor is not concluded by the statements of the bank as to the amount, character and value of its assets. In all cases of doubt he should investigate those matters fully in determining the true value of the capital stock, and should include all property and assets of every description at its true value, and when the true value is so ascertained he should assess all except the value of tangible property that has been separately assessed. This seems to be a just method of assessment, but whether it is or not, it is the law and must be enforced.

The motion for rehearing is

OVERRULED.

HAMER, J., not sitting.