No. 20,319.

THE HARVESTER BUILDING COMPANY, *Appellee*, v. J. O. HART-
LEY et al., as the Board of County Commissioners of the
County of Saline, et al., *Appellants*.

OPINION DENYING A REHEARING.

SYLLABUS BY THE COURT.

1. TAXATION—*Listing Corporate Stock for Taxation—Good Faith of
Assessor.* The evidence held not to support a finding of arbitrary con-
duct on the part of the assessor in valuing for taxation the stock of a
corporation.

2. SAME—*Listing Capital Stock for Taxation—Cases Cited and Dis-
cussed.* Cases discussed bearing upon the right to require a corpora-
tion to pay taxes upon its stock, where it is also taxed upon all the
tangible property it owns, and does no business further than renting
such property.

Appeal from Saline district court; DALLAS GROVER, judge.
Opinion denying a rehearing filed November 11, 1916. (For
original opinion of reversal, see 98 Kan. 732.)

*S. M. Brewster,* attorney-general, *S. N. Hawkes, John L.
Hunt,* assistants attorney-general, and *Leonard A. Hamner,*
county attorney, for the appellants.

*Z. C. Millikin,* of Salina, for the appellee.

The opinion of the court was delivered by

MASON, J.: This court held in this case that the plaintiff
corporation should pay taxes upon the actual value of its stock
(that is, of its shares in the aggregate), although that ex-
ceeded the assessed value of a building which it owned, and
the renting of which constituted its only business. In a
petition for a rehearing, it is again argued that the stock of
such a company can not be worth more than the physical
property owned; that "the right to exist as a corporation is
not a taxable thing." The court reached a different con-
clusion, for reasons which it undertook to state in the original
opinion. To what was there said may be added this expression
of the supreme court of Iowa, in denying the contention of an
investment company that it was entitled to deduct from the

assessed value of its stock the amount of capital it had invested in real estate, instead of the assessed value thereof:

"There is no double taxation here. Nor is there any taxation by reason of loss on real estate. If there was a loss of $8000 on real estate, it did not in any manner affect the value of the stock; this for the reason, we suppose, that the real estate was valued too low, had a potential value not estimated by the assessor, or the corporation franchise in itself added value to the shares of its stock." (*Valley Invst. Co. v. Board of Review*, 152 Iowa, 84, 89.)

1. In the original opinion this court said: "It seems clear that the judgment was not grounded upon the theory of bad faith on the part of the taxing officers." (*Building Co. v. Saline County*, 98 Kan. 732, 736.) The plaintiff contends that this conclusion violates the rule that we are bound to presume any permissible finding that will support a judgment. Upon the whole record we think it quite clear that the trial court did not, in fact, find that the public officers acted in bad faith, but if such a finding were shown it would have to be set aside as not sustained by the evidence. In the original opinion it was said that the assessor testified that the treasurer of the corporation had told him that "if any stock were sold it would bring par." This was an inaccurate interpretation of the record. The exact testimony given by the assessor was as follows:

"I asked him if any of these shares were to be sold, if he believed they would have to be sold for anything less than one hundred cents on the dollar. , He thought that—I asked him what the earnings of the company was and dividends the past year on a basis of $60,000 capital stock. He said six per cent, so I based my judgment that the capital stock was worth one hundred cents on the dollar, or par, earning six per cent, and that if they really wanted to sell any of the stock it would bring one hundred cents on the dollar."

The assessor testified that he had three conversations with the treasurer, at each of which they talked about the value of the stock. The treasurer testified that he had no recollection of any conversation with the assessor except at the time the return was made, and that at that time he did not tell him the stock was worth par. In the original opinion it was said that the treasurer testified that the property, which had cost $60,000, was no less valuable than when it had been acquired, except for natural depreciation and wear. In the petition for

Building Co. v. Saline County.

a rehearing this statement is challenged, and the testimony in question is treated as referring to the value of the property at the time of the trial, as compared with its value on March 1, 1914, the time of its assessment. On this point counsel says:

"The case was tried in June, 1915. The treasurer was asked if the property was any less valuable *then* (June, 1915), than on the 1st day of March, 1914. There is no room for controversy about this testimony, and the contention of the attorney-general and the assumption of the justice delivering the opinion is erroneous. There is not a word of testimony as to the value of the property in March, 1914, as compared with its value when purchased. Not one word."

It seems to the court that the record, considered as a whole, makes it clear that the comparison was not between values at the time of the assessment and at the time of the trial, but between them at the time the property was acquired and the time it was assessed. The transcript reads:

"Q. I believe you said there was sixty thousand dollars paid up capital stock at the time of its organization? A. Yes, sir.

"Q. And that there was practically that amount placed into the building and the lots? A. Yes, sir.

"Q. In your opinion, Mr. Merrill, is that property any less valuable now than it was at that time?

"MR. MILLIKIN [attorney for the corporation]: We object to that as not cross-examination.

"THE COURT: At this 1st day of June [the day of the trial]?

"MR. HAMNER [County Attorney]: No, on the 31st day of March, 1914, on the 1st of March, 1914.

"Question read as follows: 'In your opinion, Mr. Merrill, is that property any less valuable now than it was at that time, on the 1st day of March, 1914?'.

"THE COURT: He may answer that.

"A. Except the natural depreciation and wear."

It is entirely clear that the county attorney explained his question by substituting "on the first day of March, 1914" for "now," and it seems reasonable to suppose that the witness so understood him, and answered accordingly, but the matter is of little practical moment. The details of the evidence referred to have been gone into at this length merely for the sake of accuracy of statement. The company's claim that as a matter of law it was protected from further taxation involves a question of statutory construction that is not free from doubt. But its suggestion (it can hardly be called a contention) that its

shares were not in fact worth par is not supported by any substantial evidence. None of its witnesses undertook even to give an unqualified opinion that its shares were not in fact worth their face. The officers seem to us to have been unwilling to swear to any lower valuation, but whether we are right in this is immaterial, for they did not do so and therefore have no standing to ask an injunction based on that ground. The treasurer was asked: "Is there now, or has there been at any time within the last year and a half, any fixed value, market value, for that stock?" He answered: "I don't know of any sales since the first of January, or practically the first of January." He was asked: "Do you know what the value of the capital stock of that corporation was on the 1st day of March, 1914?" He answered: "No, I would have to arrive at that by what it could be sold for; that would depend on conditions greatly." He testified that he knew of stock having been sold for less than par, but omitted to indicate when any such sale had been made. The secretary testified that the stock had no value in excess of its tangible property, but this was in the nature of a conclusion of law. He was asked on cross-examination his opinion as to the actual value of the stock on March 1, 1914. He answered: "That would be an uncertain question. I couldn't give you a definite answer to that because I don't know. It depends on demand what the stock would be regarded worth, etc. I couldn't answer that." In the petition for a rehearing it is said that "it was shown to the court that the stock was selling at less than par," but the evidence relied upon to support the statement is that of the treasurer, already referred to, to the effect that he knew of some stock having been sold for less than its face value, the time of sale not being stated, nor the number of shares sold, or the price.

2. A number of cases cited in the company's brief had more or less bearing upon the legal question referred to, but were not mentioned in the original opinion because their application to the situation here presented was not regarded as sufficiently close to make a discussion of them desirable. We will, however, attempt a brief statement of the point involved in each, which we think is sufficient to show that these cases contain little in conflict with what we have decided.

*People v. Wells,* 97 N. Y. Supp. 47. The whole of the capital of a corporation was invested in realty. The tax commissioners deducted from the assessed value of the stock only the assessed value of the real estate (which was less than its real value) leaving a surplus for taxation. An action was brought by the company to review the assessment. The trial court dismissed it. On appeal two of the five judges thought the corporation was entitled to relief on the ground that the taxing officers should not be permitted to fix a higher value of the realty, in determining the value of the stock for the purpose of taxation, than they had given it on the real-estate tax roll. One judge concurred in reversing the decision, but for the reason that he thought the property had been fairly valued, meaning apparently that the real estate was not actually worth more than its assessed value. The other two judges dissented on the ground that the corporation could not rightfully complain, so long as its stock was not assessed at more than what it was actually worth, saying: "The language employed [in the statute] clearly shows a legislative intent to tax corporations on the full value of their property and under the rule prescribed by the statute this is accomplished, regardless of whether the assessed valuation of real estate is more or less than it should be." (p. 50.) Therefore of the six judges (including the trial judge) who passed upon the matter, only two expressed themselves as thinking that the undervaluation of the real estate as a separate item relieved the corporation from paying taxes upon the actual value of its stock.

*Lewiston Water, etc., Co. v. Asotin County,* 24 Wash. 371. Under a statute requiring a corporation to return for taxation its real and personal property, which was to be taxed as other property, an effort was made to compel a company to pay an additional tax upon its capital stock, without deduction. It was held that this amounted to an attempt at double taxation, and could not be sustained, the statute containing no provision for taxing the stock as such.

*Calumet, etc. Dock Co. v. O'Connell,* 265 Ill. 106. A corporation owned vacant and unimproved land. Its sole business was trying to dispose of it. Its tangible property was assessed at a value which exceeded the actual value as well as the market value of all the shares of stock. The taxing officers

arbitrarily "and not in the exercise of honest judgment" attempted to add to the amount for which it was liable. A pleading setting out these facts and asking an injunction was held not to be demurable.

*Hyland, Auditor, et al. v. The Brazil Block Coal Company,* 128 Ind. 335. The case is purely one of statutory construction. The assessment of the stock of a corporation whose entire capital was invested in tangible property, which was duly listed and returned for taxation, was held to be prohibited by a statute reading: " 'Where the tangible property or the capital stock of any incorporated company is listed and assessed under this act, the shares of capital stock of such incorporated companies shall not be listed and assessed.' " (p. 342.)

*First Trust Co. v. Lancaster County,* 93 Neb. 792, 795. A trust company asked that the value of real-estate mortgages which it owned should be deducted from the gross value of its capital stock for purposes of taxation. The taxing officers refused this, apparently on the ground that the mortgagors had contracted to pay the tax. It was held that the deduction should be made, because of a statute providing that " 'whenever any such bank, association or company shall have acquired real estate or other tangible property which is assessed separately, the assessed value of such real estate or tangible property shall be deducted from the valuation of the capital stock of such association or company.' " (p. 793.)

*Smith v. Stephens,* 173 Ind. 564. A bank returned for assessment its capital stock of $50,000, a surplus of $20,000 and undivided profits of $2800, making a total of $72,800. It also reported a surplus of real estate, which had cost it $14,800, but was assessed at $7070. The taxing officers undertook to add to the $72,800, on which the bank was taxable, the additional surplus of $14,800, less the $7070 for which the land was assessed. It was held that no addition could be made, apparently on the theory that the $14,800 reported as invested in real estate was a part of the $20,000 surplus returned by the bank for taxation, the court saying:

"In making the assessment the taxing officers added to the nominal surplus of the bank $14,800 invested in real estate, which was clearly erroneous under any theory of the law. In such a case, where the sum invested in real estate is deducted from the capital stock or surplus, before or in making the return, the assessed value of the real estate should

not be deducted in fixing the value of the stock, because, if it is eliminated from one side of the account it should not be included in the other." (p. 573.)

*Bank of Albia v. City Council,* 86 Iowa, 28. A national bank had a capital stock of $50,000, assumed to be worth par, and owned real estate, paid for out of its capital, costing $13,500, and assumed to be worth that. The taxing officers at first deducted $6417 from the capital stock of the bank, and later $1083 more, and assessed the remainder to the stockholders. On their complaint the court held that the amount deducted should have been $13,500, saying:

"Manifestly, if the fifty thousand dollars capital stock is assessed and taxed without regard to the portion thereof thus invested in real estate, it will amount to double taxation of the stock to the extent of the thirteen thousand, five hundred dollars. In other words if the appellee's theory is correct, it is lawful to tax the entire capital stock of fifty thousand dollars, and then, in addition, tax real estate which is acquired by an investment or use of thirteen thousand, five hundred dollars of this same stock." (p. 32.)

How the taxing officers arrived at the amount to be deducted is not shown. It appears that the practice was to assess all at sixty per cent of its cash value. Obviously, if sixty per cent of $13,500 (or $8100) had been deducted from sixty per cent of $50,000, and the remainder had been assessed to the stockholders they would not have been injured, the result being the same as taking $13,500 from $50,000 and taxing them on sixty per cent of the difference.

*Wheeler v. Co. Commissioners,* 88 Maine, 174. Under a statute requiring the proportional part of the value of property assessed to a corporation to be deducted from the value of the shares for the purpose of taxation, the taxing officers appraised the shares of a water company on the theory that the specific property was worth more than the amount for which it had been assessed. This was held to be erroneous, the court saying "it must be assumed that the requirements of law were observed and that the property was assessed 'according to the just value thereof.'" (p. 180.) The court also said, however:

"No legislation of this State has authorized municipal assessors to impose a tax upon a corporation on account of its franchise, the powers and privileges granted to it by the sovereign power of the State. The State may impose such a tax, as has been frequently done and upheld;

or, assessors in placing the valuation upon the shares of a corporation, should take into account the value of the franchise, because the value of the franchise necessarily affects the value of the shares, which by statute, are taxable to the owner thereof." (p. 181.)

*Savings Bank v. Nashua,* 46 N. H. 389. This case construes statutes as to the situs of corporate property for taxation. The scope of the decision is aptly shown by the headnotes, which read:

"Real estate belonging to a savings bank is taxable to the bank in the town or place where the real estate is situated.

"If a savings bank own stock in another corporation the bank is not taxable for the stock in the town or place where the bank is situated."

The petition for a rehearing is denied.